## AFFIDAVIT

I, GREGORY M. GERBER, having been duly sworn, state as follows:

### *INTRODUCTION AND AGENT BACKGROUND*

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since February 2023. I am currently assigned to the FBI's Boston Field Office and to that office's Corporate and Securities Fraud group. My duties include the investigation of investment fraud, money laundering, mail fraud, wire fraud, and other financial crimes. I received training at the FBI Academy in Quantico, Virginia in a variety of investigative and legal matters. I hold a Bachelor of Science degree in Accounting.

2. I submit this affidavit in support of an application for a criminal complaint charging DAVID SMERLING ("SMERLING") with wire fraud, in violation of 18 U.S.C. § 1343, and for a warrant to arrest SMERLING. As further described below, there is probable cause to believe that beginning no later than January 2016 and continuing through at least May 2020, SMERLING embezzled at least $2.5 million from his victims.

3. The facts in this affidavit are based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, information provided by witnesses, and my review of records described below. This affidavit is not intended to set forth all of the information that I have learned during this investigation but includes only the information necessary to establish probable cause for the requested complaint and arrest warrant.

## *PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED*

### Relevant Individuals and Entities

4. SMERLING is 74 years old and lives in Lexington, Massachusetts. SMERLING has been registered as an attorney in Massachusetts since 1975 and maintains an office in Lexington.

5. Victim A is 78 years old and lives in Massachusetts. Victim A and SMERLING had been business associates for more than two decades.

6. Victim B is Victim A's spouse.

7. Citizens Bank and American Express National Bank ("AMEX") are federally insured financial institutions. Citizens Bank operates using computer servers in Rhode Island.

8. Company 1 is a limited liability company based in Massachusetts founded in 1999 with Victim A and SMERLING as managers. Company 1 provided executive office space for lease in a building Victim A owned in Bedford, Massachusetts. SMERLING invested approximately $500,000 in Company 1 and was a 25 percent owner of the company; Victim A owned the remaining 75 percent interest in Company 1. Company 1 maintained a checking account with an account number ending in 3466 at Citizens Bank ("Company 1 Account"). On or about February 5, 2008, Victim A added SMERLING as an authorized signer on the Company 1 Account.

9. Company 2 is a private corporation based in Massachusetts solely owned by Victim A. Between in or about 2004 and in or about 2020, SMERLING was the corporate secretary of Company 2. Company 2 maintained a checking account with an account number ending in 7146 at Citizens Bank ("Company 2 Account").

10. Company 3 is a private realty trust based in Massachusetts that Victim A created to own property for the benefit of Victim A's children. Victim A and Victim B are the sole trustees

of Company 3. Company 3 maintained a checking account with an account number ending in 4703 at Citizens Bank ("Company 3 Account").

11.  Collectively, I refer to Company 1, Company 2, and Company 3 as the "Companies."

12.  On occasion, SMERLING provided legal advice to Victim A and the Companies.

13.  In or about 2014, Victim A hired SMERLING to oversee the bookkeeping for the Companies and for Victim A and Victim B's personal financial accounts. In connection with this role, Victim A provided SMERLING with the online log-in information for the Companies' and Victim A and B's bank accounts. Citizens Bank records show that SMERLING was also added as an authorized signer to the Companies' accounts at various times, and that he was removed as an authorized signer in or about December 2017. Victim A reported that he initially agreed to pay SMERLING a monthly fee of $10,000 for his bookkeeping role and for providing occasional legal services, which Victim A paid out of the Company 1 Account.[1] Victim A reported that he chose to pay SMERLING the $10,000 monthly payment in part because Company 1 (in which SMERLING was an investor) was never profitable, and Victim A felt bad about that. In or about December 2017, Victim A reduced SMERLING's monthly payment to $7,000 per month after Victim A hired his son-in-law ("Employee 1") to assist with bookkeeping services and reduced SMERLING's responsibilities. In or about January 2019, Victim A reduced SMERLING's monthly fee again, to $3,500 per month, after Victim A further trimmed SMERLING's responsibilities.

---

[1] Victim A did not report these payments on an IRS Form W-2 or 1099.

3

**SMERLING's Embezzlement from the Company 1 Account**

14.     Citizens Bank records show that, between at least in or about January 2016 and continuing through in or about May 2020, SMERLING regularly paid himself more than the agreed upon monthly fee from the Company 1 Account. The records show SMERLING deposited these additional payments into checking accounts in his name, including accounts at Citizens Bank with account numbers ending in 6766 ("Smerling Account 1") and 0471 ("Smerling Account 2"), and a checking account at Citizens Bank with an account number ending in 5651 that SMERLING had opened in his name "as attorney for" Company 1 ("Smerling Account 3").[2] While SMERLING initially opened Smerling Account 3 using the business address for Company 1, by at least in or about December 2017 (when Employee 1 was hired), the mailing address for Smerling Account 3 was changed to SMERLING's residential address.

15.     Citizens Bank records show, for example, that between in or about January 2016 and in or about September 2016, there was a monthly $10,000 electronic transfer from the Company 1 Account to Smerling Account 1, roughly on or about the first of the month, representing the agreed-upon monthly fee. These records further show that, during the same period, there were fourteen additional electronic transfers totaling $68,995 from the Company 1 Account to Smerling Account 1 and Smerling Account 2, as follows:

| Date | Amount | Account Receiving Payment |
|---|---|---|
| January 11, 2016 | $5,000 | Smerling Account 1 |
| January 21, 2016 | $10,000 | Smerling Account 1 |
| February 1, 2016 | $5,000 | Smerling Account 1 |
| February 4, 2016 | $1,000 | Smerling Account 2 |

---

[2] Victim A was identified as an additional authorized signer on Smerling Account 3 when it was initially opened in or about June 2010. Victim A has no memory of the opening of this account.

| Date | Amount | Account |
|---|---|---|
| February 4, 2016 | $2,000 | Smerling Account 1 |
| April 8, 2016 | $5,000 | Smerling Account 1 |
| May 9, 2016 | $5,000 | Smerling Account 1 |
| May 20, 2016 | $5,495 | Smerling Account 1 |
| June 2, 2016 | $5,000 | Smerling Account 1 |
| June 13, 2016 | $5,000 | Smerling Account 1 |
| June 20, 2016 | $5,000 | Smerling Account 1 |
| July 13, 2016 | $10,000 | Smerling Account 1 |
| July 29, 2016 | $5,000 | Smerling Account 1 |
| August 4, 2016 | $500 | Smerling Account 1 |
| **TOTAL** | **$68,995** | |

16. As another example of additional payments to SMERLING, Citizens Bank records show that between in or about January 2020 and in or about May 2020, there were thirteen transfers totaling $62,500 from the Company 1 Account to Smerling Account 3, which was $45,000 more than what the agreed upon $3,500 monthly fee should have totaled, as follows[3]:

| Date | Amount Transferred to Smerling Account 3 |
|---|---|
| January 3, 2020 | $3,500 |
| January 3, 2020 | $7,500 |
| January 10, 2020 | $3,000 |
| January 13, 2020 | $5,000 |
| January 23, 2020 | $500 |
| January 31, 2020 | $15,000 |
| February 10, 2020 | $14,500 |
| March 9, 2020 | $3,000 |
| March 16, 202 | $7,200 |
| April 3, 2020 | $3,000 |
| May 12, 2020 | $100 |
| May 13, 2020 | $100 |
| May 19, 2020 | $100 |

---

[3] Citizens Bank records show that there was an additional transfer of $280,000 on or about March 5, 2020 from the Company 1 Account to Smerling Account 3. However, these funds were subsequently transferred to an account at Pershing LLC in the name of Victim A. Victim A does not know why the funds were transferred through Smerling Account 3 and not directly from Company 1 to Victim A's Pershing LLC account.

5

|  |  |
|---|---|
| **TOTAL** | **$62,500** |

17. Between in or about January 2016 and in or about May 2020, SMERLING transferred funds from the Company 1 Account to the Smerling Accounts or negotiated Company 1 checks written to him totaling at least $500,000 in excess of the agreed-upon monthly fee (not including the $280,000 discussed in Footnote 3 above and netting out the deposits discussed in Footnote 4 below). Victim A did not authorize any payments beyond the agreed-upon monthly fee.[4]

18. In addition, records from Citizens Bank and AMEX show that, between in or about January 2016 and in or about March 2017, there were payments totaling at least $165,000 drawn on the Company 1 Account and applied to an AMEX Business Platinum Card with an account number ending in 4008 in the name of Company 1 and assigned to SMERLING. A review of the AMEX statements shows that the charges on SMERLING's 4008 account were predominantly personal in nature and not tied to Company 1's business, including thousands of dollars in travel expenses for flights, hotels, and motels, primarily in Florida, Texas, and Las Vegas, as well as charges related to pet care, a parental control application for mobile phones, a fitness subscription company, clothing, and spa services. Victim A reported that SMERLING traveled to Wisconsin and New Jersey on business approximately once per year, and that there was no work need for SMERLING to travel anywhere else.

---

[4] While there were transfers totaling $68,675 from Smerling Account 3 to the Company 1 Account, these transfers appear to be part of a money laundering scheme, in which money was transferred from one of the Companies' accounts to an account in Victim B's name ending in 8859 ("Victim B Account"), then to Smerling Account 3, after which money was transferred to the Company 1 Account, and from there, checks written on the Company 1 Account and made out to SMERLING.

19.     As noted above, in or about December 2017, Victim A hired Employee 1 (Victim A's son-in-law), to assist SMERLING with his bookkeeping responsibilities. At the same time, Victim A notified SMERLING that Victim A was going to reduce SMERLING's monthly fee to $7,000 per month, given that Employee 1 was taking over some of SMERLING's workload. Beginning in or around the same time in December 2017, only the approved monthly fee was paid from the Company 1 Account to SMERLING. However, beginning on or about April 30, 2018, in addition to the $7,000 monthly fee, Citizens Bank records show a $10,000 transfer from the Company 1 Account to Smerling Account 3, and additional payments continued from there.

20.     Employee 1 reported to investigators that, at a certain point, he noticed SMERLING was being paid more than once per month and for more than the agreed upon monthly fee. Employee 1 said he also became suspicious because SMERLING always made it seem that the Companies' money was tight even though the Companies were doing well. Employee 1 raised his concerns to Victim A, but Victim A continued to trust SMERLING.

21.     Employee 1 further reported that, in or about 2019, SMERLING attempted to recruit Employee 1 into taking more than Employee 1's authorized salary by paying himself four times per month instead of twice per month. According to Employee 1, SMERLING asked Employee 1 for a kickback of half of the extra pay. Employee 1 did not agree to the scheme.

### Embezzlement from the Company 2 Account

22.     Citizens Bank records also show that, between at least in or about January 2016 and continuing through in or about May 2020, SMERLING regularly transferred funds from the Company 2 Account to accounts in SMERLING's name, including Smerling Account 1, Smerling Account 2, Smerling Account 3, a personal checking account at Citizens Bank with an account number ending in 0607 ("Smerling Account 4"), and to a checking account in SMERLING's

7

wife's name for which SMERLING was an authorized signer with an account number ending in 4024 ("Smerling Account 5").[5]

23.     As an example of these payments, Citizens Bank records show that, in or about February 2016, there were four transfers totaling $37,500 from the Company 2 Account to Smerling Account 3, as follows:

| Date | Amount Transferred to Smerling Account 3 |
|---|---|
| February 5, 2016 | $10,000 |
| February 16, 2016 | $10,000 |
| February 22, 2016 | $7,500 |
| February 26, 2016 | $10,000 |
| **TOTAL** | **$37,500** |

24.     In total, between in or about January 2016 and in or about May 2020, SMERLING transferred at least $700,000 from the Company 2 Account directly to the Smerling Accounts. Victim A did not authorize any of these transfers.

25.     Citizens Bank records also show that, between in or about September 2016 and in or about March 2020, SMERLING transferred funds primarily from the Company 2 Account to a personal account in Victim B's name (and on which Victim A was also an authorized signer) at Citizens Bank with an account number ending in 8859 ("Victim B Account"). SMERLING then initiated corresponding transfers from the Victim B Account to Smerling Account 3. Neither Victim A nor Victim B authorized these transactions.

---

[5] SMERLING was removed as an authorized signer on Smerling Account 5 in or about November 2017.

26.     For example, Citizens Bank records show that, on or about July 7, 2019, the Victim B Account had a balance of $69.86. On or about July 8, 2019, there was an online transfer of $10,000 from the Company 2 Account to the Victim B Account. On or about the same day, there was an online transfer of $10,000 from the Victim B Account to Smerling Account 3.

27.     Similarly, Citizens Bank records show that, on or about July 12, 2019, there was an online transfer of $45,000 from the Company 2 Account to the Victim B account. On or about the same day, there was an online transfer of $45,000 from the Victim B Account to Smerling Account 3.

28.     In total, between in or about September 2016 and in or about March 2020, SMERLING transferred at least $1.5 million from the Victim B Account to Smerling Account 3.[6] These funds were largely funded by transfers from the Company 2 Account to the Victim B Account.

29.     SMERLING concealed his scheme by changing the mailing address on the Victim B Account to SMERLING's home address. Prior to January 2018, the mailing address for the Victim B Account was the business address for Company 1, from which SMERLING worked. However, in or about January 2018—just after Victim A hired Employee 1 to assist with bookkeeping—the mailing address for the Victim B Account was changed to SMERLING's home address in Lexington.

---

[6] This total does not include an additional $350,000 transfer, discussed below, or approximately $15,000 in transfers from Smerling Account 3 to the Victim B Account in or about December 2017.

**Embezzlement from the Company 3 Account**

30. Citizens Bank records also show that, between in or about March 2020 and in or about May 2020, SMERLING attempted—twice—to steal $350,000 from the Company 3 Account.

31. Specifically, on or about March 27, 2020, there was an online transfer of $350,000 from the Company 3 Account to the Victim B Account. On or about the same day, there was an online transfer of $350,000 from the Victim B Account to Smerling Account 3. On or about April 3, 2020, there was a $350,000 wire transfer from Smerling Account 3 to a checking account in SMERLING's name at Bank of America with an account number ending in 1041 ("Smerling Account 6"). Neither Victim A nor Victim B authorized the transfers from the Company 3 Account or the Victim B Account.

32. In fact, Victim A reported that, in or about April 2020 (after the $350,000 transfer described above), SMERLING asked Victim A for a $350,000 loan. Victim A did not agree to loan SMERLING the money. At this time, SMERLING did not tell Victim A that he had already taken the money.

33. Thereafter, on or about May 20, 2020, Employee 1 convinced Victim A to require SMERLING to give Victim A the online passwords to all of the Companies' bank accounts. After SMERLING gave Victim A the passwords, SMERLING confessed to Victim A that he had taken $350,000 from the Company 3 Account in March 2020, even though Victim A had denied his loan request. SMERLING promised Victim A he would return the money. Bank of America and Citizens Bank records show that, on or about May 22, 2020, there was a transfer of $350,000 from Smerling Account 6 to Smerling Account 3.

34. Employee 1 reported that, on or about May 22, 2020, he logged into the Companies' accounts on Citizens Bank's website and saw that the $350,000 had not yet been returned to the Company 3 Account. Employee 1 realized that Smerling Account 3 was linked to the Companies' accounts, and Employee 1 initiated a transfer of $350,000 from Smerling Account 3 to the Company 3 Account. Citizens Bank records confirm that, on or about May 22, 2020, $350,000 was transferred from Smerling Account 3 to the Company 3 Account.

35. On or about May 26, 2020, Employee 1 attempted to log into the Companies' bank accounts through Citizens Bank's online portal, but he was unsuccessful because the passwords had been changed. Employee 1 called Citizens Bank and learned that $350,000 had again been transferred from the Company 3 Account to Smerling Account 3. Employee 1 notified Victim A, who confronted SMERLING. SMERLING returned the money, this time in the form of a cashier's check drawn on Smerling Account 3.

36. Citizens Bank records show that the Company 3 Account also funded some of SMERLING's other transfers out of the Victim B Account. For example, on or about February 5, 2020, the Company 3 Account received approximately $2.6 million following the closing of a real estate transaction. On or about the next day, February 6, 2020, there were transfers of $100,000 and $10,000 from the Company 3 Account to the Company 2 Account. Thereafter, there were corresponding transfers of $100,000 and $10,000 from the Company 2 Account to the Victim B Account. The same day, there was a $110,000 transfer from the Victim B Account to Smerling Account 3. Upon receipt of the $110,000 transfer from the Victim B Account, Smerling Account 3 wired $115,000 to Smerling Account 6.

37. I am aware based on my training and experience and information received from other law enforcement officers and witnesses that a transfer from one Citizens Bank account, such

as the Victim B Account, to another Citizens Bank account, such as Smerling Account 3, necessarily involved a wire to Rhode Island, where Citizens Bank maintains computer servers related to its operations.

38. There is probable cause to believe that SMERLING was in Massachusetts on or about February 6, 2020, the day of the transfer of $110,000 from the Victim B Account to Smerling Account 3, because his debit card on Smerling Account 3 was used to make purchases in Lexington, Massachusetts that day. Citizens Bank records show, for example, that on or about February 6, 2020 and February 7, 2020, SMERLING's debit card for Smerling Account 3 was used to make the following purchases at Dunkin and Stop & Shop, both in Lexington:

| Date | Store | Location | Amount |
| --- | --- | --- | --- |
| February 6, 2020 | Dunkin | Lexington, MA | $6.52 |
| February 6, 2020 | Stop & Shop | Lexington, MA | $7.48 |
| February 7, 2020 | Dunkin | Lexington, MA | $5.31 |
| February 7, 2020 | Stop & Shop | Lexington, MA | $7.48 |

**Opening AMEX Accounts in the Names of Victim A and Victim B**

39. AMEX records show that SMERLING applied for two loans, one in the name of Victim A and one in the name of Victim B. Neither Victim A nor Victim B knew about or authorized these loans.

40. AMEX records show that, on or about October 10, 2017, AMEX received a loan application in Victim A's name. While the application listed Victim A's identifying information, including Victim A's Social Security number, AMEX records show that the application was submitted using the email address dsmerling@aol.com. Victim A has identified this email address as belonging to SMERLING.

41. AMEX records show that AMEX approved this loan request and, on or about October 11, 2017, disbursed $25,000 to the Company 2 Account. On or about October 16, 2017,

12

there was an online transfer of $10,000 from the Company 2 Account to Smerling Account 3.[7]

42.     AMEX records also show that, on or about April 5, 2019, AMEX received a loan application under Victim B's name. While the application listed Victim B's identifying information, including Victim B's Social Security number, AMEX records show that the application was submitted using the email address dsmerling@aol.com.

43.     AMEX records show that AMEX approved this loan request and, on or about April 8, 2019, disbursed $40,000 to the Company 2 Account. On or about April 11, 2019, there was an online transfer of $20,000 from the Company 2 Account to the Victim B Account. On or about the same day, there was an online transfer $20,000 from the Victim B Account to Smerling Account 3.[8]

## SMERLING'S Admissions

44.     Victim A reported that he confronted SMERLING several times after learning about the two unauthorized transfers of $350,000. According to Victim A, SMERLING was apologetic and gave excuses, including that SMERLING's daughter was getting married, that SMERLING had an addiction to prostitutes, and that SMERLING had invested in a spa in Florida that did not do well.

---

[7] There were additional transfers from the Company 2 Account to Smerling Account 3, via the Victim B Account, but not before additional deposits to the Company 2 Account from other sources.

[8] Again, there was an additional transfer from the Company 2 Account to Smerling Account 3, via the Victim B Account, but not before additional deposits to the Company 2 Account from other sources.

## CONCLUSION

45. Based on the information set forth above, there is probable cause to believe that, on or about February 6, 2020, while in Massachusetts, SMERLING committed wire fraud, in violation of 18 U.S.C. § 1343, when he caused a $110,000 online transfer from the Victim B Account to Smerling Account 3, which was processed through Citizens Bank's computer server in Rhode Island.

_____
Gregory M. Gerber
Special Agent
Federal Bureau of Investigation

Attested to by the applicant via telephone in accordance with
the requirements of Fed. R. Crim. P. 4.1 by

_____
Hon. Jennifer C. Boal
United States Magistrate Judge

on January 13, 2025